### MARINO v. KANSAS CITY BRIDGE CO., Inc.

### No. 2042.

Court of Appeal of Louisiana. First Circuit. Nov. 9, 1939.

Breazeale & Sachse, of Baton Rouge, for appellant.

Fred G. Benton and C. G. Spaht, both of Baton Rouge, for appellee.

LeBLANC, Judge.

This is a suit brought under the provisions of the Workmen's Compensation Law, Act No. 20 of 1914, the demand being for the maximum amount of compensation allowed by the statute for total permanent disability, plus the sum of $250 for medical expenses.

Plaintiff's employer was the Kansas City Bridge Company, Inc., sole defendant in the case. The company was engaged in construction of some form on the Mississippi River bridge just north of the City of Baton Rouge, and plaintiff's work consisted in doing hard, manual labor.

He alleges that on the day he was injured, September 8, 1938, the crew he was working with was engaged in knocking out blocks from under the cutting edge on Pier No. 2 in the river. They knocked these blocks out with a heavy timber 12 by 12 by 20 ft. long, which was used as a battering ram, and while they were so using it, it struck him on the left knee and produced an injury which eventually rendered him disable to perform work of the kind he was accustomed to.

He avers that notwithstanding the severe pain caused by his injury at the time, he continued to work that day and returned from day to day until December 9, 1938, when the pain became so intense that he could no longer continue and that he was then sent to Dr. Clarence A. Lorio, the company's physician, who treated him for about seven weeks and then discharged him

as having recovered enough to be able to go back to work. He alleges that he tried to work but was unable to do so. He then describes the injury to his knee in detail and alleges that it is of such nature as to make it impossible for him to do any hard work.

He alleges that he was earning $33.60 per week and is therefore entitled to receive maximum compensation of $20 per week not exceeding four hundred weeks.

The defendant for answer admits plaintiff's employment and the amount of his wages. It specifically denies however that he sustained an injury in an accident as set out in his petition and that he is entitled to compensation. Further answering the defendant avers that in the event it should be shown that he did suffer any such injury his claim is not compensable because of his failure to report it and have it given treatment at the time which might have cured or minimized it.

Judgment below was in favor of plaintiff for the full amount of his demand and defendant has appealed.

Plaintiff in his testimony relates the manner in which he sustained his injury on September 8, 1938. There were eight or nine men handling the heavy piece of timber which they used as a battering ram. It was suspended from a rig by means of a cable. The men swung it backward and then forward into the blocks they were knocking out. It was hard to hold it steady and so in manipulating it once it struck him a glancing blow on the left knee. He suffered some pain but did not think much of the injury so he continued working, thinking it would wear off. Later he was put to work carrying cement up a run-way eight feet high. The pressure on his leg was too great and his knee began to ache so that he found it necessary to report to the company's physician, Dr. Lorio, who treated him for forty-six days and then told him that he did not know what was the matter with his knee but that he could perform light work. He went back and applied for that type of work and was told that he could get work but that there was "no such thing as an easy job." From then he went or was sent to one and then another doctor on whose testimony we will briefly comment later.

Plaintiff's testimony regarding the accident in which he sustained the injury to his knee is corroborated by that of two fellow employees, Louis Johnson and Lester Guillory, and there is an admission in the record that a third, L. E. Lott, would testify to the same facts as did these two if he were placed on the witness stand.

In the absence of any contradiction this testimony furnishes ample proof of an accidental injury and inasmuch as it seems that plaintiff's injury now causes the disability he complains of, the important question in the case is the effect of his delay of two months in reporting it and submitting to treatment so that it could be remedied or its effects minimized.

We are favorably impressed with the testimony of the plaintiff and especially with his explanation of the delay in reporting the accident. He evidently did not believe the injury would turn out to be as serious as it did. When asked, in effect, why he did not report the accident sooner than he did, he answers: "I thought there was not much to it. I thought it might go away." As Dr. Lorio's testimony indicates that immediate treatment following the accident would have benefited his knee and his present condition would not be as bad as it is, we do not believe that plaintiff should be penalized if he honestly thought that his injury was not that serious, and in spite of it he continued to work. Notwithstanding the pain which it produced he still considered it a slight injury and carried on until he could no longer endure it. It strikes us rather that he should be commended for the course he followed. Even after he had been treated about six weeks by Dr. Lorio and was told by him that he might do some light work, he followed the doctor's advice and instruction, went back to his employer and applied for that type of work. He was told that there was no work of that kind to be had. He testifies, and is not contradicted on that point, that he reported three times for work but was told there was no such thing as light work to be given. It was only then that he consulted an attorney who advised him to see another doctor for further examination. Surely on this state of facts it cannot be said that the plaintiff acted unreasonably in failing to report his injury any sooner that he did.

The doctor he consulted is Dr. J. R. Godfrey, a young practician in Baton Rouge, who diagnosed his condition as bursitis, an inflammation due to an injury to the bursa of the knee. He describes the treatment he administered which, however, resulted in no improvement. He is still of the opin-

ion that his original diagnosis is correct, that plaintiff is at present totally unable to perform hard, manual labor and that the only method by which he can obtain relief is an operation.

Dr. G. C. Battalora, a specialist in orthopedic surgery with several years of training and experience, also examined the plaintiff's injured knee and diagnosed his trouble as hypertrophy of the intra-patella fat pad, the result of trauma. He advocates operative intervention with complete exploration of the knee joint as there is a possibility of some other condition such as injury to the external semi-lunar cartilage. He is of the opinion that unless plaintiff receives the medical attention he suggests, that is an operation, it will be a case of indefinite disability.

Dr. Clarence A. Lorio and Dr. Guy A. Caldwell did not appear as witnesses at the trial of the case but their testimony was accepted in the form of statements found in the record and copied in the note of evidence. Dr. Lorio does not agree with either the diagnosis of Dr. Godfrey or that of Dr. Battalora and Dr. Caldwell does not express an opinion concerning the findings of these two doctors. They both seem to think that plaintiff has a rupture and displacement of the semi-lunar cartilage. Dr. Caldwell is inclined to believe that plaintiff is exaggerating his pain and tenderness, nevertheless he states that the condition he has constitutes a total disability for an occupation as a laborer. Both these doctors strongly advise surgical attention as the only treatment which would produce relief.

A careful consideration of all the medical testimony must lead to the conclusion that whilst there is no definite agreement among the doctors as to the exact nature of the condition in plaintiff's knee, they are all positively of the opinion that it has produced a disability to perform hard, manual work, which can only be relieved by an operation which they seem to agree will result favorably.

In this court it is suggested in effect, by counsel for defendant, that such a judgment be rendered as would compel the plaintiff to have his injured knee repaired by taking such an operation, but it does not appear that anything has been done heretofore in the way of tendering an operation nor is that question at issue as far as the pleadings show. On the issues as presented, and on the testimony found in the record, we find the judgment appealed from to be correct and it is accordingly affirmed at the costs of the defendant.